IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| NISSAN NORTH AMERICA, INC., | ) |
| Plaintiff, | ) Civil Action No.  1:23-cv-666 |
| vs. | ) |
| CORLEY NISSAN, LLC D/B/A ED CORLEY NISSAN, | ) |
| Defendant. | ) |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff Nissan North America, Inc. ("Nissan") asserts the following claims against Defendant Corley Nissan, LLC's ("Defendant" or "Corley") and would show the Court:

**NATURE OF ACTION**

1. This is an action for (i) damages due to breach of contract to recover monies owed; (ii) disgorgement of profits and injunctive relief for trademark infringement under Section 43(a) of the Lanham Act, 15 U.S.C. §§ 1125(a)(1)(A); and (iii) related claims arising under common law and New Mexico law.

**THE PARTIES**

2. Nissan is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in Franklin, Tennessee.

3. Corley is, and at all times mentioned herein has been, a limited liability company formed and existing pursuant to the laws of the State of New Mexico. At all times relevant to the

1

allegations herein, Corley has its principal place of business at 1000 Jefferson Avenue, Gallup, New Mexico 87301.

4.  The members of Corley are Corley Automotive Group, Inc., and Debora M. Money.

5.  Corley Automotive Group, Inc., is a corporation organized and existing under the laws of the State of New Mexico with its principal place of business located at 1870 W Santa Fe Ave., Grants, NM 87020.

6.  Debora M. Money is, upon information and belief, a New Mexico resident.

## JURISDICTION AND VENUE

7.  This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(b) and 1367.

8.  This Court has personal jurisdiction over Corley because it is a limited liability company organized and existing under the laws of New Mexico and has its principal places of business in New Mexico. Further, as alleged above, Corley's members are residents of New Mexico for purposes of personal jurisdiction. Further, the conduct giving rise to this Complaint occurred in New Mexico.

9.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Corley resides within this judicial district and is subject to the court's personal jurisdiction.

## FACTUAL ALLEGATION

**A. The Parties' Relationship and Corley's Payment Obligations.**

10.  Nissan is the exclusive distributor of new Nissan brand motor vehicles in the United States, which it sells to its network of authorized Nissan dealers. Authorized Nissan dealers sell

new Nissan motor vehicles, parts, and accessories at retail and provide service for those motor vehicles.

11. On July 27, 2005, Nissan and Corley entered into a Nissan Dealer Sales & Service Agreement (the "Dealer Agreement"). The Dealer Agreement incorporated the terms of the Nissan Dealer Sales and Service Agreement Standard Provisions bearing form number NDA-4S/9-88 (the "Standard Provisions").

12. Pursuant to the terms of the Dealer Agreement and the parties' ongoing business relationship, Nissan sold new motor vehicles to Corley which would then be sold at retail to the public.

13. Between January 6, 2021, and December 1, 2021, Nissan sold Corley 25 vehicles identified by their Vehicle Identification Number ("VIN") as follows:

    1)     3N1CP5CVXLL571423
    2)     3N1AB8CVXMY215503
    3)     3N1AB8CV0MY202727
    4)     3N1AB8CV0MY216000
    5)     3N1AB8CV3MY224947
    6)     3N1CN8EVXML837870
    7)     JN1BJ1CW9LW651692
    8)     3N1AB8CV8MY211398
    9)     3N1AB8CV2MY208867
    10)    3N1AB8CV5MY215179
    11)    1N4BL4DV3MN342196
    12)    1N4BL4DV0MN343614
    13)    1N4BL4DV5MN343981
    14)    1N4AA6CV1MC504806
    15)    1N6AA1ED4MN517312

      16)    1N6AA1ED6MN517019

      17)    1N6ED1EK3NN628653

      18)    1N6ED1EKXNN629783

      19)    5N1DR3DK1NC223962

      20)    1N6AA1ED3MN533694

      21)    5N1AT3AB3MC836480

      22)    5N1DR3DK0NC223256

      23)    3N1AB8CV0NY210134

      24)    1N4BL4DV5NN300002

      25)    1N4BL4DV0NN304068

14. The total price invoiced by Nissan to Corley for these vehicles was $763,375.

15. Section 9.A of the Dealer Agreement Standard Provisions required Corley to pay Nissan the applicable price for such vehicles.

16. However, Corley has failed to pay Nissan for any of the 25 vehicles, despite numerous demands that it do so.

17. Pursuant to the terms of the Dealer Agreement, Corley also maintained a non-vehicle account ("NVA"). Nissan sold to Corley parts, tools, goods, and services totaling $152,995.83 as reflected in Corley's NVA account balance.

18. In material breach of the Dealer Agreement, and despite numerous demands by Nissan, Corley has failed and refused to pay to Nissan the $152,995.83, which remains due and owing.

19. Section 9.C.2(i) of the Standard Provisions requires Corley to pay Nissan a delinquency charge of 1% per month for all amounts Corley owes to Nissan but that Corley has failed to pay. In further material breach of the Dealer Agreement, Corley has failed to pay to Nissan the delinquency charge set out in Section 9.C.2(i) of the Standard Provisions.

20. On March 10, 2022, because of Corley's failure to pay for the vehicles, among other material breaches of the Dealer Agreement, Nissan—in accordance with the terms of Section 12.A and Section 12.B of the Standard Provisions and applicable New Mexico law—issued a Notice of Termination ("NOT"), terminating Corley's Dealer Agreement and right to operate as an authorized Nissan dealer. In accordance with the terms of the NOT, the termination became effective May 17, 2022.

**B. Corley's Unlawful Continued Use of Nissan Marks.**

21. Nissan has the exclusive right to sublicense the use of various trade names and service marks (which are on the principal register of the United States Patent and Trademark Office), logos and derivations thereof (the "Nissan Marks").

22. For many years, Nissan has committed substantial financial and other resources in the United States to advertise, promote, sell, service, and warrant Nissan products and related services, including Nissan motor vehicles.

23. Nissan has spent many millions of dollars advertising its products and services under the Nissan Marks. Because of these efforts, Nissan has developed substantial goodwill in the United States for the name Nissan, the Nissan Marks, and related products and services.

24. Pursuant to Section 6.C. of the Standard Provisions, "[the] Dealer's use and operation of signs displayed by Dealer at the Dealership Location and Dealer's display of any Nissan Mark shall be subject to [Nissan's] approval."

25. Section 6.K. of the Standard Provisions provides "Dealer may not, either directly or indirectly, display any Nissan Marks at any location or facility other than those identified in the Dealership Facilities Addendum to this Agreement, without the prior written consent of [Nissan]."

26. Section 6.K. further provides that "Dealer shall promptly change or discontinue its use of any Nissan Marks upon Seller's request. Any authorization granted may be withdrawn by Seller at any time and, in any event, shall cease immediately upon the effective date of termination."

27. In addition, Section 13.A.1. of the Standard Provisions required Corley to discontinue its use of any and all Nissan Marks upon termination of the Dealer Agreement.

28. In violation of the Dealer Agreement Standard Provisions and applicable law, following its termination as an authorized Nissan dealer, Corley has unlawfully used Nissan Marks in the operation of the business at the location of its former Nissan dealership.

29. Further, the Dealer Agreement, the Standard Provisions, the Dealer Identification Addendum, and the Sign Program – Lease and Maintenance Agreement dated February 24, 2005 and entered into between Corley, Nissan, and Nissan Motor Acceptance Corporation (the "Sign Lease"), authorized Nissan upon termination of Corley as an authorized Nissan dealer to enter the dealership premises to cover, remove, obliterate, or return, at Nissan's discretion, any and all Nissan Marks.

30. In direct violation of these provisions, Corley intentionally interfered with—and prevented—Nissan's entry onto the dealership premises to remove the Nissan Marks.

31. Following the termination of Corley's Dealer Agreement, Nissan made requests to Debora Money, one of Corley's owners, that Nissan or its designated vendor be provided with access to the dealership property in order to remove the signs in accordance with both the Dealer Agreement Standard Provisions and the Sign Lease.

32. Those requests were rejected, and Corley has continued to refuse Nissan or its vendor access to remove the signs.

33. As a result, Nissan is now obligated to institute this lawsuit to protect its intellectual property interests in the Nissan Marks and enforce its contractual rights.

34. Upon information and belief, Corley has profited from its unlawful use of the Nissan Marks.

35. Following its termination as an authorized Nissan dealer, Corley purchased used Nissan vehicles and advertised them for sale at the former Corley Nissan dealership location. In doing so, Corley improperly conveyed to consumers that it remained an authorized Nissan dealer through the ongoing display of the Nissan Marks, including as displayed on the dealership signage.

36. Following the termination of Corley's Dealer Agreement, Corley continued to use the Nissan Marks in its email address, website address, legal entity name, advertising and as displayed in prominent signage on its former Nissan dealership facility and on its website.

37. Corley has used the Nissan Marks in such a fashion as to intentionally create a false impression among the consuming public that it and the used motor vehicles it was selling originated from Nissan or were sponsored, approved by, guaranteed by, warranted by, managed, and/or affiliated with Nissan.

38. Corley has used and, unless ordered to stop, will continue to unlawfully use the name Nissan and the Nissan Marks in such a fashion as to intentionally create a false impression among the consuming public and to benefit from the valuable and favorable reputation and goodwill associated with the Nissan name and Nissan Marks.

39. Corley, by and through the foregoing acts, has intentionally created and is likely to continue to create confusion and mistake among the public, customers, prospective customers, creditors, suppliers, and/or others to deceive them as to, *inter alia*, (a) the affiliation, connection, and association of Corley with Nissan; (b) the origin, sponsorship, or approval of Corley's goods or commercial activities by Nissan; and (c) the nature, characteristics, qualities, and warranties associated with Corley's goods, services, or commercial activities, all of which are for the purpose of enhancing the commercial value of, or selling or soliciting sales of, those products.

40. By reason of the foregoing, Nissan has suffered and will continue to suffer irreparable harm to its property, business, reputation, and goodwill, and has suffered and will continue to suffer dilution of the distinctive quality of the Nissan Marks.

41. It would be impossible to determine the amount of monetary damage incurred by Nissan as a result of Corley's actions. However, the profits that have been wrongfully obtained and retained by Corley through the foregoing acts can be specifically determined and is, in part, the compensation being sought by Nissan for Corley's unlawful actions.

42. The acts of Corley alleged herein were knowing, intentional, willful, and extraordinary.

43. An award of Corley's profits, which is Nissan's remedy at law, is inadequate to fully compensate Nissan for the injuries caused by Corley. Corley is continuing the foregoing activities and, unless enjoined, will continue to do so, all to Nissan's irreparable harm and will require a multiplicity of judicial proceedings.

## LEGAL CLAIMS

**COUNT I: BREACH OF CONTRACT (NONPAYMENT OF AMOUNTS OWED)**

44. Nissan hereby re-alleges and incorporates the allegations set forth in the foregoing Paragraphs as if repeated verbatim herein.

45. Corley's failure to pay Nissan $763,375 for the vehicles identified *supra* in Paragraph 13 constitutes a breach of the Dealer Agreement.

46. As a direct and proximate result of Corley's failure to pay for the vehicles, Nissan has suffered damages in an amount no less than $763,375, plus the 1% delinquency charge specified in Section 9.C.2(i) of the Standard Provisions.

47. Further, Nissan sold Corley parts, tools, and other goods and services which were charged to Corley's NVA. Following the termination of Corley's Dealer Agreement, Corley owed Nissan a balance of $152,995.83 in its NVA, which remains unpaid and owing by Corley despite Nissan's repeated requests for payment.

48. Corley's failure to pay Nissan $152,995.83 for such goods and services constitutes a material breach of the Dealer Agreement. As a direct and proximate result of such breach, Nissan has suffered damages of no less than $152,995.83, plus the 1% delinquency charge specified in Section 9.C.2(i) of the Standard Provisions.

49. Corley's conduct in committing these breaches of contract was intentional, willful, malicious, fraudulent and oppressive, done with knowledge of and utter indifference to their harmful consequences, and done recklessly and with wanton disregard for the rights of Nissan.

50. Corley is liable to Nissan for actual damages of the amounts owed, punitive damages, pre- and post-judgment interest, and for the costs of court in bringing this action.

## COUNT II: BREACH OF CONTRACT (USE OF NISSAN MARKS)

51. Nissan hereby re-alleges and incorporates the allegations set forth in the foregoing Paragraphs as if repeated verbatim herein.

52. Effective May 17, 2022, Nissan terminated Corley as an authorized Nissan dealer.

53. The Dealer Agreement Standard Provisions and Sign Lease both obligated Corley to discontinue the use of any and all Nissan Marks upon termination. The Dealer Agreement and Sign Lease further required that Corley allow Nissan to enter the dealership premises to cover, remove, obliterate, or return, at Nissan's discretion, any and all Nissan Marks.

54. Corley has breached the Dealer Agreement and Sign Lease in that it (a) continued and continues to use the Nissan Marks in direct violation of the Dealer Agreement and (b) refused and refuses to allow Nissan to enter the dealership premises to cover, remove, obliterate, or return, at Nissan's discretion, any and all Nissan Marks, including as displayed on the dealership signage.

55. Further, following its termination as an authorized Nissan dealer, Corley used the Nissan marks in its email address, website address, legal entity name, advertising and as displayed in prominent signage on its former Nissan dealership facility and on its website in breach of its obligations under the Dealer Agreement and Sign Agreement.

56. Corley's conduct in committing these breaches of contract was intentional, willful, malicious, fraudulent and oppressive, done with knowledge of and utter indifference to their harmful consequences, and done recklessly and with wanton disregard for the rights of Nissan.

57. Nissan is entitled to specific performance by Corley of the obligations set forth in the Dealer Agreement and Sign Agreement.

58. Additionally, Nissan is entitled to actual damages, punitive damages, pre- and post-judgment interest, and for the costs of court in bringing this action.

### COUNT III: TRADEMARK INFRINGEMENT (15 U.S.C. § 1125(a))

59. Nissan hereby re-alleges and incorporates the allegations set forth in the foregoing Paragraphs as if repeated verbatim herein.

60. This is a claim for trademark infringement under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

61. Corley's use and threatened continued use of the Nissan Marks and tradenames infringes upon Nissan's rights in the Nissan Marks in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

62. Corley's use of the Nissan Marks is likely to cause confusion, or to cause mistake, or to deceive in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

63. Corley's conduct has caused and will continue to cause immediate and irreparable injury to Nissan for which Nissan has no adequate remedy at law. Nissan is entitled to injunctive relief, a disgorgement of Corley's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

### COUNT IV: VIOLATION OF THE NEW MEXICO UNFAIR PRACTICES ACT (NMSA § 57-12-3)

64. Nissan hereby re-alleges and incorporates the allegations set forth in the foregoing Paragraphs as if repeated verbatim herein.

65. Corley engaged in a course of unfair trade practices through the acts and omissions described above, including through its ongoing unlawful use of the Nissan Marks in violation of

11

Nissan's intellectual property rights, causing a likelihood of confusion and substantial injury to the public and to Nissan.

66. The acts and omissions described above constitute unfair methods of competition and constitute unfair or deceptive acts or practices in the conduct of commerce in violation of the New Mexico Unfair Practices Act.

67. Accordingly, Corley is liable for all compensatory damages allowable by law, for treble damages under the New Mexico Unfair Practices Act, punitive damages for willful and/or reckless or grossly negligent conduct, and attorney's fees and costs.

## COUNT V: PRELIMINARY AND PERMANENT INJUNCTION

68. Nissan hereby re-alleges and incorporates the allegations set forth in the foregoing Paragraphs as if repeated verbatim herein.

69. Corley, by its acts and omissions described above, including through its ongoing unlawful use of the Nissan Marks in violation of Nissan's intellectual property rights and in violation of the Dealer Agreement and Sign Agreement and its refusal to allow Nissan to enter the dealership premises to cover, remove, obliterate, or return, at Nissan's discretion, any and all Nissan Marks, has caused and will continue to cause Nissan irreparable harm for which there is no adequate remedy at law.

70. It is likely Nissan will prevail on the merits of this action.

71. If no preliminary injunction is issued, Nissan will continue to suffer irreparable harm, and an injunction is necessary to protect Nissan's rights until this matter can be finally decided.

72. Nissan's interest in protecting the Nissan Marks and its goodwill with the consuming public significantly outweighs any potential harm to Corley if a preliminary injunction is granted.

73. A preliminary injunction is in the public interest as it will prevent any ongoing harm resulting from Corley's unlawful use of the Nissan Marks including by eliminating any confusion or deception regarding the relationship between Corley and Nissan in the course of Corley's business.

74. Nissan is therefore entitled to a preliminary injunction requiring Corley to prevent the unlawful use of the Nissan Marks and to allow Nissan access to the property to cover, remove, obliterate, or return, at Nissan's discretion, any and all Nissan Marks.

75. Further, Nissan is entitled to a permanent injunction to prevent the unlawful use of the Nissan Marks and to allow Nissan access to the property to cover, remove, obliterate, or return, at Nissan's discretion, any and all Nissan Marks.

## **JURY TRIAL DEMAND**

Nissan respectfully demands a trial by a full jury for all issues so triable.

## **REQUEST FOR RELIEF**

WHEREFORE, Nissan prays for judgment against Defendant Corley Nissan, LLC as follows:

A. An award of actual, compensatory, consequential, treble, and punitive damages against Defendant;

B. An order directing Defendant to specifically perform their obligations under the Dealer Agreement and Sign Agreement;

C. A preliminary injunction and a permanent injunction enjoining Defendant's ongoing unauthorized use of the Nissan Marks;

D. An award of pre-judgment and post-judgment interest on any amounts recovered herein;

E. An award of Nissan's costs, disbursements, and attorneys' fees incurred in bringing this action; and

F. Such other and further relief as the Court may deem appropriate under the circumstances.

Dated: August 10, 2023

Respectfully Submitted,

By: *s/ Todd E. Rinner*
Todd E. Rinner
SNELL & WILMER
201 Third Street N.W., Suite 500
Albuquerque, NM 87102-3370
(520) 882-1264
trinner@swlaw.com

*and*

Christopher C. Genovese (*pro hac vice forthcoming*)
Patrick. D. Quinn (*pro hac vice forthcoming*)
NELSON, MULLINS, RILEY & SCARBOROUGH, LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
(803) 799-2000
chris.genovese@nelsonmullins.com
patrick.quinn@nelsonmullins.com

*Attorneys for Plaintiff Nissan North America, Inc.*